IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LISA JULIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 13 C 9075 |
| ADVANCED EQUITIES, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

On December 19, 2013, plaintiff Lisa Julin ("Julin") filed a form "Complaint for Employment Discrimination" against her former employer, Advanced Equities, Inc. ("AEI"), and its parent company, Advanced Equities Financial Corporation ("AEFC"), alleging that AEI and AEFC discriminated against her based on her sex in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* (Dkt. No. 1.) After numerous delays by Julin and her counsel, the details of which are summarized in this court's November 4, 2014 and December 5, 2014 Memorandum Opinions and Orders (Dkt. Nos. 39, 42), Julin filed a first amended complaint ("Amended Complaint") (Dkt. No. 26 ("Am. Compl.")) naming additional defendants, Jeffery Alan Binkert and Does 1-15, and broadening the Title VII claim from her form complaint into 15 "causes of action": (1) fraud in the inducement; (2) breach of contract – written, oral and implied; (3) intentional interference with contractual rights; (4) interference with prospective economic advantage; (5) violation of the Illinois Wage Payment & Collection Act, 820 ILCS § 115/14 ("IWPCA"); (6) conversion; (7) unjust enrichment; (8) accounting; (9)

sex discrimination; (10) violation of the Fair Labor Standards Act and Title VII; (11) sexual harassment; (12) defamation *per se*; (13) retaliatory discharge; (14) failure to supervise; and (15) respondeat superior.[1]

On November 4, 2014, the court granted AEFC's Rule 12(b)(6) motion to dismiss because Julin failed to allege facts establishing that AEFC was her employer, and granted AEI's Rule 12(b)(5) motion to dismiss because Julin failed to perfect service on an agent or officer of AEI. (Dkt. No. 39.) The court, in an exercise of discretion, extended the deadline for service on AEI until December 31, 2014, which was also the deadline for Julin to serve the additional defendants she named in her Amended Complaint. (*Id.*)

On January 12, 2015, seeing no proof of service on any defendant, the court dismissed the case pursuant to Rule 4(m). (Dkt. No. 44.) Approximately five minutes before the clerk docketed the court's order, however, Julin filed a "waiver of the service of summons" executed by AEI on December 15, 2014. (Dkt. No. 43.) Julin provided no explanation for her failure to comply with the court's deadline, as has been her custom throughout this litigation. The court nevertheless reinstated Julin's case against AEI in light of AEI's waiver and ordered AEI to respond to the Amended Complaint by February 3, 2015. (Dkt. No. 45.) Binkert and Does 1-15 remain dismissed from the case and have never been served as far as the court can tell. (*Id.*)

On February 3, 2015, AEI moved to dismiss (Dkt. No. 47) the second, fifth through eighth, and eleventh through fifteenth causes of action pursuant to Rule 12(b)(6). AEI's motion does not address Julin's fraud, Title VII, or FLSA claims. For the reasons explained below, AEI's motion to dismiss is granted in part and denied in part.

---

[1] The court's numbering matches Julin's numbering of her causes of action.

RELEVANT FACTUAL BACKGROUND

This matter arises out of Julin's employment and eventual termination by AEI, a venture capital firm specializing in late-stage private equity placements with a focus on the technology sector. (Am. Compl. ¶ 13.) In early 2009, Julin interviewed for a position as an investment advisor on Jeffery Binkert's investment team at AEI. (*Id.* ¶ 14.) During four separate interviews, Binkert and other AEI employees told Julin that upon generating $10,000,000 in investment revenue, she would: (1) be made equity partner in Binkert's investment team; (2) receive a promotion in title; (3) share in revenues from over 200 team accounts; and (4) receive inherited accounts from departed brokers (collectively, the "Oral Agreement"). (*Id.* ¶ 16.) Binkert's assertions during the interviews were "the critical determining factor[s]" in Julin's decision to accept AEI's offer of employment. (*Id.*)

On January 23, 2009, following the series of interviews, Julin entered into a written employment contract ("Employment Contract") with AEI. (*Id.* ¶ 17.) The Employment Contract entitled Julin to (1) a minimum of 3% commission for investments she generated of $1 million or more; (2) a minimum of 8% commission for investments she generated "in an LLC formed by AEI which invested in any company for which AEI served as a placement agent"; (3) warrants to purchase shares in investee companies; and (4) a share of the "back-end" fees AEI received from investors. (*Id.* ¶ 18.) Julin signed the Employment Contract and started work at AEI on February 2, 2009. (*Id.* ¶ 19.)

In September 2009, Julin entered into another (presumably written) agreement with AEI specifying the terms of her compensation for investments related to her Fisker Automotive, Inc. account (the "Fisker Contract"). (*Id.* ¶ 25.) The Fisker Contract provided that Julin would receive 5% commission for all direct sales of Fisker Series A-1 Convertible Preferred Stock and 10% of

all indirect sales of other Fisker securities offered through alternative investment vehicles. (*Id.* ¶ 26.)

By April 2012, the relationship between Julin and AEI had soured because of disputes concerning Julin's compensation and a pattern of "discriminatory and unethical conduct" towards her because of her sex. (*Id.* ¶¶ 22-51.) The court need not recite the details of Julin's sex discrimination claims here because the pending motion does not seek dismissal of those claims. With regard to her compensation, although Julin generated in excess of $10,000,000 in investment revenue for AEI early in tenure at the firm, she never received any of the benefits Binkert and others promised her as part of the Oral Agreement. (*Id.* ¶ 92.) AEI also failed to pay Julin a portion of her commissions and expenses in accordance with the terms of her Employment Contract and the Fisker Contract.

On November 15, 2012, AEI terminated Julin's employment as part of a larger layoff. (*Id.* ¶¶ 80-81.) On July 11, 2013, Julin filed a charge of discrimination against AEI with the EEOC and received a "right to sue" letter on September 20, 2013. (*Id.* ¶¶ 84-85.) On December 19, 2013, exactly 90 days after receiving her right to sue letter, Julin filed this lawsuit. (Dkt. No. 1.)

## ANALYSIS

Before turning to the merits of AEI's motion to dismiss, the court must address the form of Julin's Amended Complaint. The Amended Complaint begins with 85 numbered paragraphs and then states 15 "causes of action," each of which incorporates the preceding paragraphs and states a single reason why AEI's conduct was wrongful. As the Seventh Circuit stated more than twenty years ago, "[p]utting each legal theory in a separate count is a throwback to code pleading, perhaps all the way back to the forms of action; in both, legal theory and facts together

created a 'cause of action.' The [Federal] Rules of Civil Procedure divorced the factual from legal aspects of the claim and replaced the 'cause of action' with 'claim for relief' to signify the difference." *N.A.A.C.P.* v. *American Family Mut. Ins. Co.*, 978 F.2d 287, 292 (7th Cir. 1992) (citing *Bartholet* v. *Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992)). Here, Julin has not even bothered to follow Rule 10(b)'s instruction to plead using "counts"; instead she styles her Amended Complaint using the "causes of action" that truly have no place in a federal pleading.

To avoid further delaying a case that has already languished for far too long—Julin filed her original complaint in December of 2013—the court will address the pending motion to dismiss without requiring Julin to bring her Amended Complaint into compliance with the Federal Rules of Civil Procedure. The court will not, however, waste its resources addressing each additional legal theory seeking the same recovery sought in earlier "causes of action": "[o]ne set of facts producing one injury creates one claim for relief, no matter how many laws the deeds violate." *N.A.A.C.P.* 978 F.2d at 292 (citations omitted).

I. <u>Second Cause of Action</u>

In her second cause of action, Julin brings an Illinois state law breach of contract claim against AEI for its failure to pay her commissions and reimburse certain expenses as promised in the Oral Agreement, her Employment Contract, and the Fisker Agreement. (Am. Compl. ¶ 106.) She also alleges that AEI breached the other provisions of the Oral Agreement by failing to make her an equity partner on the Binkert team, failing to allow her to share in the revenues from other teams' accounts, and failing to provide her with "inherited accounts" from departed employees. (*Id.*) AEI argues that Julin's second cause of action must be dismissed because she has failed to allege the existence of an oral contract and because any potential oral contract is superseded by

the merger and integration clause contained in Julin's Employment Contract, a copy of which AEI attached to its motion to dismiss (Dkt. No. 48-1).

As a preliminary matter, AEI's motion does not address its alleged failure to pay the commissions required by the written agreements—Julin's Employment Contract and the Fisker Agreement—and that is a sufficient basis to deny AEI's motion with regard to the second cause of action. With regard to the alleged oral contract, Julin has sufficiently alleged a breach of contract claim. AEI, through Binkert, allegedly promised her certain commissions, salary benefits, and promotions if she hit fixed performance targets. Julin accepted the job based on Binkert's promises and met the required performance targets, but AEI failed to pay her as promised.

AEI's second argument, that Julin's alleged oral agreement is superseded by the merger clause in Julin's Employment Contract, is more convincing but is not a matter the court can resolve on a motion to dismiss. The court may, as stated in the court's December 5, 2014 Memorandum Opinion and Order, consider the Employment Contract since it is central to Julin's breach of contract claim. (Dkt. No. 42 at 3-4 (citing *See Hecker* v. *Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009) (holding district courts may exercise discretion in considering outside documents without converting a motion to dismiss into one for summary judgment when documents are referenced by the complaint and central to the case))). And under the doctrine of merger and the parol evidence rule, "a written agreement that is complete on its face supersedes all prior agreements on the same subject matter and bars the introduction of evidence concerning any prior term of agreement on that subject matter." *Magnus* v. *Lutheran Gen. Health Care Sys.*, 601 N.E.2d 907, 914 (Ill. App. Ct. 1st Dist. 1992). Here, however, the court cannot make the threshold determination that Julin's Employment Contract represents a complete agreement with

regard to Julin's compensation. Julin's Amended Complaint alleges an employment relationship characterized by a tangled web of commission agreements, some of which varied by the individual deal. For example, nine months after Julin signed the Employment Contract, she and AEI entered into a separate, written agreement providing for a different commission rate on Fisker investment deals. The court must draw all inferences in favor of Julin at this stage of the litigation, and it is a fair inference here that the Employment Contract did not represent the entire agreement with regard to Julin's compensation. Accordingly, the court cannot find that the Employment Contract's merger clause supersedes any contractual claims arising out of the alleged Oral Agreement. AEI's motion to dismiss Julin's second cause of action is therefore denied.

II.     Fifth, Sixth, Seventh, and Eighth Causes of Action

In her fifth, sixth, seventh, and eighth causes of action, Julin seeks to recover unpaid commissions and expenses based on the IWCPA and state law theories of conversion, unjust enrichment, and accounting. The commissions and expenses at issue are the same commissions and expenses sought in Julin's second cause of action, her contract claim, and the various theories rest on the same conduct alleged in support of the contract claim. Indeed, the inclusion of these additional causes of action seems intended to identify every possible law AEI violated by failing to pay Julin her allegedly earned commissions and allegedly unreimbursed expenses. As the court noted earlier, however, "[o]ne set of facts producing one injury creates one claim for relief, no matter how many laws the deeds violate." *N.A.A.C.P.* 978 F.2d at 292. Julin's fifth, sixth, seventh, and eighth causes of action are surplusage; they simply add more theories en route to the recovery sought in Julin's second cause of action (and her first cause of action, but that is not at issue in this motion). Other judges in this district have dismissed as moot additional legal

theories improperly pled as separate counts. *See, e.g.*, *FDIC* v. *Coleman Law Firm*, 862 F. Supp. 2d 833, 837 (N.D. Ill. 2012) (Shadur, J.). This court will do the same. Julin's fifth, sixth, seventh, and eighth causes of action are dismissed as moot.

III.    Julin's Withdrawn Eleventh and Twelfth Causes of Action

Julin's eleventh cause of action alleges sexual harassment in violation of Title VII and the Illinois Human Rights Act, 775 ILCS § 5/2-102 ("IHRA"). In response to AEI's assertion that Julin has not exhausted her administrative remedies under the IHRA, Julin withdrew her claim under the IHRA. (Dkt. No. 51 at 12.) Julin's eleventh cause of action is accordingly dismissed in so far as it purports to bring a claim under the IHRA.[2]

Julin also withdrew her twelfth cause of action for defamation per se in response to AEI's motion to dismiss. (*Id.*) The twelfth cause of action is also dismissed.

IV.    Thirteenth Cause of Action

Julin's thirteenth cause of action appears to be an Illinois state law claim for retaliatory discharge. She does not expressly state whether the cause of action arises under federal or state law. In order to sustain an Illinois state law retaliatory discharge claim, a plaintiff must allege that she has been: "(1) discharged; (2) in retaliation for the employee's activities; and (3) that the discharge violates a clear mandate of public policy." *Sallis* v. *Prime Acceptance Corp.*, No. 05 C 1525, 2005 WL 1950661 (N.D. Ill. Aug. 10, 2005) (Der-Yeghiayan, J.) (citing *Hartlein* v. *Illinois Power Co.*, 601 N.E.2d 720, 728 (Ill. 1992)). Julin alleges that she was involuntarily terminated after complaining of discrimination and sexual harassment "in violation of Illinois public policy," but she does not identify the particular policy AEI violated. In fact, Illinois courts

---

[2] Neither party addressed Title VII liability with regard to the eleventh cause of action. Because AEI did not move to dismiss Julin's other Title VII claims, the court presumes that AEI intends to answer the allegations that pertain to Title VII.

have limited retaliatory discharge claims to terminations in retaliation for filing claims under the Illinois Workers Compensation Act and in retaliation for whistleblowing. *Miachel* v. *Precision Alliance Group, LLC*, No. 117376, 2014 IL 117376, at *5 (Ill. Dec. 4, 2014). Faced with this seemingly problematic hurdle, Julin's response states, without further explanation, that "[w]hile the heading [of the Amended Complaint] may not, the substance of the count makes it clear that it is seeking remedy for retaliation under Title VII." (Dkt. No. 51 at 12.) Julin's argument is simply not plausible. Her thirteenth cause of action makes no mention of Title VII and specifically alleges a violation of Illinois public policy. It is clear that Julin, consistent with her approach throughout the Amended Complaint, intended to supplement her Title VII claims with a duplicative Illinois state law theory of liability. In this case, however, Julin has not identified the "mandate of public policy" her termination offends, and her state law retaliatory discharge claim must accordingly be dismissed.

V.      Fourteenth Cause of Action

Julin's fourteenth cause of action alleges a state law claim against AEI for negligently failing to supervise its employees for "the behavior . . . complained of" in the Amended Complaint. To the extent Julin seeks redress for the discrimination she allegedly suffered at the hands of AEI's employees, her claim is preempted by the IHRA. "The IHRA preempts all state law claims seeking redress for a civil rights violation within the meaning of that statute." *Krocka* v. *City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000) (citations and quotations omitted). Julin may, of course, seek redress for the discriminatory actions of AEI's employees through her surviving Title VII claims.

To the extent Julin seeks redress for the actions AEI's employees took in furtherance of withholding her commissions and expenses, Julin's allegations are (i) duplicative, since she has

already brought claims seeking the commissions and expenses against AEI directly, and (ii) insufficient to state a claim. Julin's Amended Complaint says nothing beyond the threadbare allegation that AEI "negligently failed to supervise" its employees." (Am. Compl. ¶ 207.) Although the court must accept as true all factual allegations contained in a complaint, that "tenet . . . is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Julin has not supported her failure to supervise claim with any allegations specific to AEI's supervision and accordingly has not stated a claim sufficient to meet the pleading standard of Rule 8. Her fourteenth cause of action is dismissed.

VI.  Fifteenth Cause of Action

Julin's fifteenth cause of action seeks to hold AEI liable for the "discriminatory, fraudulent, and otherwise unlawful and improper actions of the Defendants alleged in the preceding paragraphs" of the Amended Complaint under a state law theory of *respondeat superior*. (Am. Compl. ¶ 212.) Under Illinois law, an employer may be liable for the torts of its employees that are committed "within the scope of that employment." *Robinson* v. *Roney Oatman, Inc.*, No. 97 C 8964, 1999 WL 98338, at *8 (N.D. Ill. Feb. 19, 1999) (Pallmeyer, J.). The only tort claim remaining in this lawsuit is the first cause of action for fraud in the inducement, which Julin brought against AEI and its employee, Jeffery Binkert. But Binkert is no longer a defendant in this lawsuit. The court dismissed the claims against Binkert on January 12, 2015 after Julin failed to serve him within the time provided by Rule 4(m). (*See* Dkt. No. 44.) Accordingly, in the absence of any tort claims against its employees, Julin cannot sustain a state law claim for *respondeat superior* against AEI.[3] Julin's fifteenth cause of action is dismissed.

---

[3] The court's determination on Julin's state law claim does not prevent Julin from pursuing her claims against AEI arising under Title VII, which provides a separate standard for holding an employer liable for the discriminatory acts of its employees.

## CONCLUSION

For the reasons explained above, the court grants AEI's motion [47] to dismiss Julin's fifth, sixth, seventh, eighth, twelfth, thirteenth, fourteenth, and fifteenth causes of action, and denies AEI's motion with regard to Julin's second cause of action. Julin's eleventh cause of action is dismissed with regard to any claim arising under the IHRA. Julin's third and fourth causes of action are also dismissed because the causes of action are alleged only against Binkert and Does 1-15, all of whom the court dismissed from the case in its 1/12/2015 Order [44]. Julin's first, second, ninth, and tenth causes of action remain pending. AEI shall file its answer to the remaining "causes of action" in Julin's Amended Complaint by 4/30/2015. The court requests that counsel for the parties meet and confer pursuant to Rule 26(f). The court further requests that counsel file a joint Form 52 by 5/14/2015. The case is set for a report on status and entry of a scheduling order on 5/19/2015 at 9:00 a.m. The parties are strongly encouraged to discuss settlement.

ENTER:

*James F. Holderman*
JAMES F. HOLDERMAN
District Judge, United States District Court

Date: April 17, 2015